UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| ACCESS THERAPIES, INC., | ) |
| --- | --- |
| Plaintiff, | ) |
| vs. | ) Case No. 1:13-cv-01317-JMS-DML |
| ERICKSON MENDOZA, | ) |
| Defendant/Counterclaimant, | ) |
| vs. | ) |
| ACCESS THERAPIES, INC., MANUEL GARCIA, HARVINDER DHANI, RAMON VILLEGAS, MICHELLE MARCOS, EUGENE GARCIA, and TESS MABESA, | ) |
| Counterclaim Defendants. | ) |

## Order Denying Motion to Dismiss First Amended Counterclaims

This matter is before the court on a motion by counterclaim defendants Access Therapies, Inc., Manuel Garcia, Harvinder Dhani, Ramon Villegas, Michelle Marcos, Eugene Garcia, and Tess Mabesa to dismiss the counterclaims filed against them by defendant Erickson Mendoza. (Dkt. 65).[1] Mr. Mendoza filed an opposition to their motion. The counterclaim defendants did not file a reply brief. Twelve of the fifteen counterclaims seek relief solely against defendant Access Therapies, Inc. ("Access"). The other three counterclaims are (1) a claim under the Trafficking

---

[1] The parties have consented to the magistrate judge issuing a ruling on this motion. *See* Dkts. 69 and 70.

Victims Protection Act, 18 U.S.C. §§1589-1590 and 1595 and (2) two RICO claims. The court will first address the counterclaims against Access Therapies alone before addressing the three counterclaims that include the individual defendants.

## Standard of Review

A claim survives a motion to dismiss under Rule 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *United Food and Commercial Workers Unions v. Walgreen Co.,* 719 F.3d 849, 853 (7th Cir. 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) and *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).

## The Counterclaims[2]

Plaintiff Erickson Mendoza's counterclaims arise out of his employment relationship with Access. Mr. Mendoza is a physical therapist. Access is a professional staffing agency that contracts with nursing homes to provide physical therapists on a temporary basis. In August 2010, Mr. Mendoza (who is a citizen of the Philippines) contacted Access about potential employment by it within the United States. Access agreed to hire Mr. Mendoza and to act as his sponsor for obtaining an H-1B visa, without which he could not work in the United States. Access agreed to hire Mr. Mendoza for a term of three years, to provide him with free housing for those three years, and to pay the fees associated with the H-1B visa process. Access provided Mr. Mendoza with a written contract and, although the

---

[2] The recitation of facts in this section is based on the allegations of the counterclaims. The court accepts their accuracy only for purposes of the motion to dismiss.

2

term regarding housing benefits stated that housing benefits were limited to three months instead of the three-year term, Access assured Mr. Mendoza that his housing benefits were for the entire three years. Based on that assurance, Mr. Mendoza signed the contract.

The visa process included Mr. Mendoza's completion of certain requirements. He took remediation classes associated with a test of English-language proficiency that he was required to, and did, pass. He obtained certain credentials through the Foreign Credentialing Commission on Physical Therapy. Access paid the fees associated with the classes, test, and credentials, but required Mr. Mendoza to sign two promissory notes for these expenses. One note was for $610. The second note was for $750. Mr. Mendoza alleges that Access's demand that he sign these notes was contrary to his employment rights.

On July 1, 2011, Access filed an application for an H-1B visa with the Department of Labor ("DOL"). The application stated that Mr. Mendoza was to begin work on October 1, 2011, and represented that Mr. Mendoza would be paid $32 per hour. On February 12, 2012, Access told Mr. Mendoza that his visa had been approved but that he needed to participate in an interview with a U.S. consular in Manila. During that interview, the consular discovered a discrepancy between the $32/hour figure in the DOL application and a $29/hour figure in the contract that Access had sent to Mr. Mendoza. The consular temporarily suspended final approval of the application pending receipt of an amended contract from Access. Access provided Mendoza with an amendment to his contract that

contained the $32/hour figure and told Mr. Mendoza to give the amendment to the consular. Access coached Mr. Mendoza about not making any statements to the consular that would indicate he or Access was involved in fraudulent behavior by presenting one wage amount to the government to gain a visa but privately contracting to pay a lower wage amount. He was coached to report that he had an amended contract matching the $32 figure and it mistakenly had not yet been sent. Mr. Mendoza gave the consular the amended contract and on May 1, 2012, the H-1B visa received final approval. Despite the amended contract, Mr. Mendoza alleges that Access failed to pay wages to him at the rate it promised and for the periods of time it was required to do so.

On July 1, 2012, Mr. Mendoza arrived in Indianapolis ready for an assignment from Access. At that time, Access required him to sign a promissory note for $20,000, which would have to be paid if Mr. Mendoza did not fulfill the three-year term of his written agreement. This was the third promissory note that Access had required him to sign. Mr. Mendoza signed five other promissory notes near the beginning of his tenure with Access. He signed two notes on July 27, 2012, for $2,479.11 and $15,000, respectively. He signed two notes on August 24, 2012, for $200 and $164, respectively. He signed a note on August 28, 2012, for $1,910.25. Mr. Mendoza contends that these promissory notes demand payment for items that Access either had no legal right to require Mr. Mendoza to pay, or Access promised it would pay, or Access promised it would not charge to Mr. Mendoza. He also

contends that the $20,000 note was extortionate and used to coerce Mr. Mendoza to remain in Access's employ despite its continued broken promises.

Mr. Mendoza contends that Access and its principals use the H-1B visa process to prey on vulnerable foreign nationals like himself. He asserts that Access lured him to its employ with promises of good wages, benefits, and working conditions, but then reneged on those promises while at the same time trapping him into servitude. He alleges that Access required him, and other workers, to sign unconscionable promissory notes that contain illegal penalty clauses and used the threat of enforcing those notes to coerce him not to complain or seek relief based on his working conditions or Access's broken promises. The counterclaims seek relief under state law theories (breach of contract, unjust enrichment, and a wage statute) and various federal statutes, including RICO, the Trafficking Victims Protection Act, and the Truth in Lending Act.

## Analysis

### I. INA "Exhaustion"

The defendants make an overarching argument that because Mr. Mendoza's counterclaims are grounded in part on conduct by Access or its employees allegedly in violation of H-1B visa program requirements under the Immigration and Naturalization Act (INA) and implementing regulations, Mr. Mendoza cannot pursue any of his claims in court. They contend that although Mr. Mendoza has "technically" pleaded non-INA substantive claims (*e.g.,* RICO claims, Truth in Lending Act claims, and Indiana contract and wage-related claims), "the substance

5

of the Counterclaims is alleged violations of the INA." (Dkt. 66 at p. 5). From this premise, the defendants argue that because there is no private right of action under the INA and because violations of the INA can be remedied through an administrative complaint process under the aegis of the Department of Labor, the counterclaims must be dismissed in their entirety. (*Id.* at p. 6).

Mr. Mendoza does not contest the absence of a private right of action under the INA, either express or implied, and district courts that have examined the question generally have adopted the viewpoint of the Fourth Circuit Court of Appeals that there is no implied right of action under the INA. *Venkatraman v. REI Systems, Inc.,* 417 F.3d 418, 423-24 (4th Cir. 2005) (finding no implied right of action under the INA to redress claim by United States citizen employee who alleged his employer had violated the INA by falsely claiming that there was a shortage of qualified U.S. workers in order to hire cheaper labor). The Seventh Circuit has not decided this issue.

Mr. Mendoza argues that his counterclaims allege conduct in violation of laws other than the INA (even if some of the conduct may also violate the INA) and that because he is not seeking relief under the INA, it makes no difference that there is no private right of action under the INA and he is not required to exhaust any remedies that statutory scheme provides.

The court agrees with Mr. Mendoza, at least at this stage of the case. The defendants' argument, though not denominated as such, is grounded in preemption principles as to Mr. Mendoza's state law claims, and preclusion principles as to his

6

federal law claims. *See POM Wonderful LLC v. Coca-Cola Co.,* 134 S.Ct. 2228, 2236 (2014). Preemption is the doctrine under which a court may find that federal law "so thoroughly occupies a legislative field" that state laws concerning the same subject matter are displaced. *Id.*; *see also Wigod v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 576-578 (7th Cir. 2012) (discussing the three forms of preemption—express preemption, field preemption, and conflict preemption—under which a court may determine that state law claims are supplanted by federal law). When the issue does not involve balancing state and federal interests but whether different sources of federal law can govern the same conduct, a court must analyze whether one federal statutory scheme precludes the operation of another federal statutory scheme. *POM Wonderful,* 134 S.Ct. at 2238 (deciding that the defendant's compliance with FDA food labeling requirements did not preclude plaintiff's remedy under the Lanham Act based on the defendant's alleged deceptive labeling of its juices).

    A. <u>Preemption</u>

Mr. Mendoza's Indiana state law claims seek to enforce promises by Access governing their employment relationship. He contends that Access either demanded payments from him that were not owed or failed to pay him wages and benefits that were owed. Indiana statutory and common law provides remedies for just this sort of alleged conduct, and Mr. Mendoza seeks relief under Indiana's state laws. *See* Amended Counterclaims, Dkt. 49, Count I (alleged violation of Indiana's statutory wage law); Count II (for breach of contract); and Count III (unjust

enrichment). Access does not point to any preemption doctrine under which the INA supplants Indiana law. Further, when analyzing preemption, a court must assume that "the historic police powers of the States were not to be superseded by [a Federal Act] unless that was the clear and manifest purpose of Congress." *Wyeth v. Levine,* 555 U.S. 555, 565 (2009).

As noted above, there are three possible forms of preemption—express, field, and conflict. Express preemption asks whether Congress, in the federal statute at issue, included a provision explicitly preempting all state laws on the same subject matter. *Crosby v. National Foreign Trade Council,* 530 U.S. 363, 372 (2000). Access has not pointed to any language in the INA that expressly preempts state law.

Under field preemption, "a state law is preempted if federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Wigod,* 673 F.3d at 576 (internal citations and quotations omitted). It is the exceptional situation where a law has such wide berth that it fits this description. *Id.* at 577. When the federal law provides limited remedial authority—such as when it does not create a private right of action—then claims seeking "basic" state law remedies under "basic" state law theories should be permitted to go forward. *Id.* That principle applies here. First, there is no express private right of action under the INA. Second, the INA's administrative process provides somewhat limited remedial authority. It permits adjudication of complaints in a typical administrative process that culminates in

8

the ability to seek judicial review of final agency action. *See* 20 C.F.R. §§655.800 - 655.855. Judicial review under those circumstances generally is limited because the court owes substantial deference to the agency's decision. *See Roadway Express, Inc. v. United States Dep't of Labor,* 612 F.3d 660, 664 (7th Cir. 2010) (discussing standards for review of final agency action under the Administrative Procedures Act).

Conflict preemption describes a situation where it is not possible for a party to comply with both the federal law and state law or where state law "is an obstacle to the accomplishment and execution of the full purposes and objective of Congress." *Id.* at 578. On the record before it, the court cannot conclude that Indiana wage statutes and common law contract principles require employer conduct that is inconsistent with INA requirements or that enforcing state law would "stand as an obstacle" to the INA. *See Wigod,* 673 F.3d at 581-82 (noting numerous instances where Supreme Court has examined state law claims that incorporate federal standards of conduct "without so much as a peep about" preemption).[3]

The court is not persuaded by the cases cited by Access suggesting that the exclusive remedy available to an employee hired under the H-1B program is an administrative remedy under the INA. *See, e.g., Shibeshi v. Philander Smith*

---

[3] Other courts similarly have refused to dismiss state law claims on the ground that they cannot be pursued independently from the INA. *See Alves v. Masters Entertainment Group, LLC,* 2008 WL 4452145 (N.D. Ind. 2008) (though dismissing federal claim for violation of the INA because of the absence of a private right of action and the failure to exhaust administrative remedies, court merely relinquished jurisdiction over the state law claims for breach of employment contract, failure to pay wages, and quantum meruit).

9

*College,* 2011 WL 4529455 at *2 (E.D. Ark. 2011) (dismissing breach of contract claim because plaintiff was "attempting to circumvent the non-availability of a private cause of action" under the INA, though addressing state law wage claim on its merits); *Alves v. Masters Entertainment Group, LLC,* 2008 WL 4452145 (N.D. Ind. 2008) (though dismissing federal claim for violation of the INA because of the absence of a private right of action and the failure to exhaust administrative remedies, court merely relinquished jurisdiction over the state law claims for breach of employment contract, failure to pay wages, and quantum meruit); *Zhang v. China Gate, Inc.,* 2007 WL 2686834 (W.D. Wash. 2007) (dismissing claims brought directly under the INA because of the lack of a private right of action and noting that state law claim for failure to pay promised severance benefits was proceeding in another federal court); *Shah v. Wilco Systems, Inc.,* 126 F.Supp.2d 641, 647-48 (S.D.N.Y. 2000) (dismissing state law contract claim on ground that plaintiff did not allege the specific contractual provisions that were breached and his contract did not encompass provisions of the INA). These cases did not address preemption which, it seems to this court, is the appropriate doctrinal basis for determining whether a person's state law claims must be dismissed because an alternative remedy is available under a federal statute.

Some of the cases cited by Access permitted state law breach of contract or wage claims to go forward so long as there was a basis for the claims "independent" of the INA. *See Panwar v. Access Therapies, Inc.,* 975 F.Supp.2d 948 (S.D. Ind. 2013). In *Panwar,* Judge Pratt allowed state law claims based on the plaintiff's

written employment agreement with Access but not any claims that were based solely on requirements under the INA or Access's visa application to the Department of Labor. *Id.* at 959 n.1. The court relied on *Shibeshi,* 2011 WL 4529455 at *2 (E.D. Ark. 2011), in finding that the visa application between Access and the government setting forth terms and conditions of the plaintiff's employment "is not contractual in nature between the employee and the employer." This court finds these holdings in *Panwar* or *Shibeshi* inapplicable in this case, at this stage, for three reasons. First, Access seeks here even greater relief than it was accorded in *Panwar,* in which some state law claims were allowed to proceed. Second, the court is not convinced on the record before it that Mr. Mendoza's contract with Access did not, and cannot as a matter of law, incorporate various employment promises that Access disclosed or agreed to as part of its application for Mr. Mendoza's visa. The parties did not explicitly brief that contract theory and the court declines to find on this record and in the context of a motion to dismiss that no INA requirements and no promises made in Mr. Mendoza's visa application were also contractual promises made to Mr. Mendoza upon which he can seek relief under state law. Third, by deciding not to file a reply brief, Access did nothing to counter Mr. Mendoza's arguments about the ways in which his state law claims do not in fact depend solely on INA requirements.

> B. <u>Preclusion of Relief Under Other Federal Statutes</u>

The court also cannot find that Mr. Mendoza's federal law claims are precluded as a matter of law solely because they reference some requirements under

11

the INA. First, as with Mr. Mendoza's state law claims, Mr. Mendoza's federal law claims do not depend solely on Access's and the individual defendants' alleged failures to comply with INA requirements. Instead, he complains about a spectrum of activity engaged in by Access or its employees as independently violative of federal laws in addition to the INA. Indeed, numerous courts have entertained on their merits federal law claims similar to those raised by Mr. Mendoza without suggesting that the Department of Labor's administrative complaint procedure under the INA prevents their consideration by a court. *E.g., Panwar v. Access Therapies, Inc.,* 975 F. Supp. 2d 948, 957-58 (S.D. Ind. 2003) (addressing on the merits claims under RICO and the Trafficking Victims Protection Act); *Alves v. Masters Entertainment Group, LLC,* 2008 WL 4452145 at *5-7 (N.D. Ind. 2008) (addressing on its merits claim under the FLSA by H-1B visa worker).

Thus, the court rejects as unsupported the defendants' argument that the INA supplants Mr. Mendoza's federal law claims or that Mr. Mendoza had some obligation to exhaust remedies under the INA as a condition to bringing those claims.

## II. State law claims

Other than its broad-based argument that Mr. Mendoza's state law claims are either preempted by the INA or require adjudication under the INA's administrative process, Access and the individual defendants do not challenge that they fail to state a claim. Because the court has rejected the INA

exhaustion/preemption argument, the court DENIES the motion to dismiss Mr. Mendoza's state law claims.

## III. Federal law claims

Access and the individual defendants also challenge Mr. Mendoza's RICO and TILA claims on their merits. They have not challenged the Trafficking Victims Protection Act (TVPA) claim, and this court finds no reason to reach a different conclusion than the one reached by Judge Pratt on similar facts in *Panwar,* 975 F.Supp.2d at 957-58, that allegations of financial coercion like that charged by Mr. Mendoza state a claim to relief under the TVPA.

### A. RICO Claims

The individual defendants make only two arguments to support their request that the court dismiss Mr. Mendoza's RICO claims.[4] First, they argue that the claims are deficient as a matter of law because Mr. Mendoza has not sufficiently pleaded the existence of an enterprise "separate and apart from the Counter-Defendants themselves." (Dkt. 66 at pp. 10-11). Second, they argue that the RICO claims are deficient because they do not bear a "family resemblance to the paradigmatic RICO case in which a criminal obtains control of a legitimate (or legitimate-appearing firm) and uses the firm as the instrument of his criminality." (*Id.* at p. 12). The court rejects both arguments.

The first argument misstates the allegations of the counterclaims. That argument depends on the characterization of the RICO enterprise as an association in fact. Numerous RICO cases decided on motions to dismiss have highlighted a

---

[4] It is important to note that the defendants do not challenge on Rule 12(b)(6) grounds whether the amended counterclaims sufficiently allege a pattern of predicate criminal acts.

14

deficiency when a complaint describes an association-in-fact enterprise but the enterprise is nothing more than the defendants' actions in committing predicate acts. An enterprise must be "more than a group of people who get together to commit a 'pattern of racketeering activity.'" *Stachon v United Consumers Club, Inc.,* 229 F.3d 673, 675 (7th Cir. 2000) (internal citations omitted). The enterprise, even if it is an association-in-fact, must be "an organization with structure and goals separate from the predicate acts themselves." *Id.* (quoting *United States v. Masters,* 924 F.2d 1362, 1367 (7th Cir. 1991)). This principle that an association-in-fact enterprise must be distinct from the persons committing the predicate acts is not applicable here because Mr. Mendoza has not alleged an association-in-fact enterprise. Mr. Mendoza's counterclaims allege that Access is the enterprise. Access is an organization that has a "structure and goals" separate from the predicate acts alleged. Because the counterclaims allege an enterprise distinct from the individual predicate acts, the court rejects the defendants' motion to dismiss on that basis.

The defendants' "family resemblance" argument is also insufficient here. Mr. Mendoza has alleged criminal activity by each of the individual defendants and their use of Access's apparent legitimate professional staffing services in a way designed to prey on foreign workers and injure them in their property or business. The court cannot conclude that the counterclaim alleges a situation so "absurdly remote" from a paradigmatic RICO case that it should be dismissed without further factual development. *See Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 226-27 (7th Cir.

15

1997) (noting danger of RICO's broad wording being applied to "situations absurdly remote from the concerns of the statute's framers").

Thus, the individual defendants' motion to dismiss the RICO claims (Counts V and VI) is DENIED.

B. <u>**Truth in Lending Act Claims**</u>

Eight of Mr. Mendoza's counterclaims assert violations by Access of the Truth in Lending Act ("TILA") in conjunction with the eight different promissory notes that he signed. (Counts VII through XIV). Access's motion to dismiss the TILA claims argues that TILA does not apply to any of the notes as a matter of law. It posits that the notes "are nothing more than restatements of the damages provision of the employment agreement's liquidated damages set out in the form of a promissory note" and that if Mr. Mendoza had not breached his employment agreement, then he would owe nothing under the notes. (Dkt. 66 at p. 16). These premises, according to Access, mean that (a) the notes do not represent extensions of credit either because there is no obligation "initially payable" to Access or there was no "right to defer payment of a debt" and (b) even if credit was extended, it was extended for a business purpose, and not primarily for a personal, family, or household purpose. Access's factual premises are contradicted by allegations in the counterclaims and its legal arguments are not supported by any case law.

The court finds that Mr. Mendoza adequately has alleged a factual foundation to support a theory that Access is a creditor and extended credit within the meaning of TILA and that the credit was extended primarily for personal,

16

family, or household purposes. *E.g., Tower v. Moss,* 625 F.2d 1161, 1166 (5th Cir. 1980) (for TILA claims, court must examine transaction as a whole in light of "the entire factual circumstances"); *Roman v. First Franklin Financial Corp.,* 2001 WL 322563 (N.D. Ill. Mar. 3, 2001) (analysis whether transaction involved extension of business credit is fact intensive). Because Access has not met its burden to show that the facts alleged by Mr. Mendoza, accepted as true, fail to state a claim to relief under TILA that is plausible on its face, its motion to dismiss the TILA claims is DENIED.

## IV. <u>Rescission</u>

Access's final argument is that Count XV of the amended counterclaims—denominated rescission—must be dismissed because it is impossible for the court to return the parties to the status quo. Mr. Mendoza alleges in Count XV that he was fraudulently induced to sign Note 3—the document that obligates him to pay $20,000 to Access as liquidated damages in the event he was not employed by Access for at least three years—and he seeks rescission of the note because it was fraudulently procured. The court declines to dismiss Count XV because rescission is not a cause of action; it is a remedy. The court is not convinced that there is no set of circumstances pleaded in the counterclaims under which the court may prevent Access from enforcing any provision of Note 3, a remedy akin to rescinding any obligation by Mr. Mendoza to pay the note. Under Fed. R. Civ. P. 54, a court "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleading." Moreover, rescission is a possible remedy

17

under TILA. The court does not decide now, of course, that rescission is in fact the appropriate relief. The appropriate remedies must await factual development of this case.

## Conclusion

For the foregoing reasons, the court DENIES the defendants' motion (Dkt. 65) to dismiss Mr. Mendoza's amended counterclaims.

So ORDERED.

Dated: September 18, 2014

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system